Great Northern Life Insurance Company, Appellee, v. Federal Life Insurance Company, Appellant.

Gen. No. 34,615.

Heard in the first division of this court for the first district at the October term, 1930. Opinion filed March 2, 1931.

LOUCKS, ECKERT & PETERSON, for appellant; TOM LEEMING, of counsel.

HELMER, MOULTON, WHITMAN & HOLTON, for appellee; CHARLES R. HOLTON, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by defendant from a judgment in the sum of $3,231.26 entered upon the finding of the court. The action was in assumpsit. Plaintiff bases its claim on two reinsurance policies Nos. 45642 and 54338. By policy No. 45642 defendant company on August 25, 1919, reinsured a risk in an amount formerly taken by plaintiff on the life of John Otto G. Goertz of Wassau, Wisconsin. By policy No. 54338, defendant on March 14, 1921, reinsured another risk on the life of Goertz for the sum of $2,000. Both of these reinsurance policies were issued under a reciprocal reinsurance agreement made between plaintiff and defendant July 6, 1911. This agreement was expressly made a part of each policy.

There is no dispute as to the facts which are stipulated. Reinsurance policy No. 45642 was originally for $3,000. On October 3, 1921, it was reduced as of the date of August 20, 1921, to $500. Goertz died April 9, 1924. Proofs of death were submitted under four different policies which were in part covered by these reinsurance policies, and plaintiff paid to the beneficiaries named in these policies total sum of $15,000.

The defense presented is that the policies upon which plaintiff sues had been terminated prior to the death of Goertz. This defense is based on an interpretation of the fifth and tenth clauses of the reciprocal reinsurance agreement of July 6, 1911. The fifth clause, after stating that the insuring company shall have the privilege of renewing the reinsurance at the end of five years and that in such case shall be bound to continue all the reinsurance then in force "either continuously or by reinstatement or substitution," continues: "provided that in the event the Insuring Company increases its maximum limit on an individual or single life to be retained at its own risk

in excess of all reinsurance, the Insuring Company may, by giving written notice to the Reinsuring Company, reduce policies of reinsurance issued hereunder by such amount in each case as will increase the amount of insurance to be carried at its own risk, as aforesaid, to its then current maximum, but if any policy of reinsurance is so reduced all policies of reinsurance issued hereunder and then in force must be similarly reduced; provided, further, that if any life is reinsured in two or more companies, the reinsurance issued hereunder shall in such case be reduced only in the proportion that the total reduction required bears to the total reinsurance on such life. All such reductions shall take effect upon the renewal dates of the respective reinsurance policies next after the date of such notice.''

The tenth clause provides:

'If the amount of original insurance carried on any life by the Insuring Company is reduced the reinsurance on such life issued hereunder shall *ipso facto* be reduced in like amount; provided, however, that if such life is reinsured in two or more companies the reinsurance issued hereunder shall be reduced only in the proportion that the total reduction in the original insurance bears to the total reinsurance on such life. The Insuring Company shall be entitled to a refund of any unearned premium on reinsurance so reduced, such unearned premium to be calculated from the date of such reduction.''

At the time of the execution of the reciprocal reinsurance contract, the maximum risk which plaintiff might take upon a single life was fixed at the sum of $5,000. On April 12, 1921, the maximum risk was increased to the sum of $7,500. On March 19, 1923, it was again increased as of date of April 1, 1923, to

$10,000, and plaintiff wrote defendant to that effect, as follows:

"Chicago, Ill. Mar. 19, 1923. ·
"Federal Life Insurance Company,
Federal Life Bldg.,
Chicago, Illinois.

"Gentlemen:

"Our Executive Committee has decided to increase our maximum retention on one life from $7,500 to $10,000 as from April 1st, 1923.

"In accordance with the terms of our reinsurance agreement this increase in maximum retention will take effect on the anniversary date of the reinsurance commencing with and following April 1, 1923.

"If agreeable to you we will make this request at the time when payment of the renewal premium is tendered on the understanding of course that you are not on the risk for the amount by which your reinsurance policy is to be reduced from the due date of the premium.

Very truly yours,
J. P. P. Oliver,
Actuary and Ass't Secretary."

On March 21, 1923, the actuary for defendant wrote plaintiff as follows:

"We are in receipt of your letter of the 19th instant advising us that your company has increased its maximum retention on one life from $7,500 to $10,000 and that this increase in retention will take effect on the anniversary date of the reinsurance commencing with and following April 1st, 1923, in accordance with the terms of the reinsurance agreement between our respective companies.

"It will be entirely agreeable to us to handle the matter as indicated in your letter and if you will forward policy of reinsurance to be reduced on account

of this increase to us upon the next anniversary we will be glad to give the matter our prompt attention.''

It is the contention of defendant that the effect of this correspondence under the terms of the reciprocal reinsurance agreement was to effect an automatic termination of the policies as of the subsequent dates of their respective anniversaries. The first anniversary after the notice on policy No. 45642 was August 20, 1923, while that of policy No. 54338 was March 14, 1924. If the reduction in reinsurance was carried out upon these dates and if the amount of the policies carried by plaintiff remained the same, the effect would have been to wipe out these two reinsurance policies.

Without further notice to defendant plaintiff on April 27, 1923, issued another insurance policy to Goertz in the sum of $5,000, and also without notice to or knowledge of defendant, reinsured this last risk on Goertz to the amount of $2,500 with the Lincoln National Life Insurance Company. As a result, plaintiff, upon the respective anniversaries of the reinsurance policies, was carrying the full maximum amount of insurance upon the life of Goertz. When the premium on No. 45642 fell due it was remitted to defendant in the usual course of business and was retained by it. The premium upon the $500 insurance policy amounted to $4.83 and was paid September 29, 1923. The payment was a matter of record in defendant's office, and an examination of the record by the head of the actuary department would have disclosed the fact. All matters as to reinsurance were handled for defendant by its vice president, and it is conceded that he did not have the actual knowledge which an investigation would have disclosed.

The parties agree that it is of vital importance to an insurance company to know how much insurance a risk carries; that it is the general custom in the application of reinsurance that the insuring companies

require and furnish copies of report of medical examination and other information; that defendant had the right under the reinsurance agreement to reinsure the life of any policyholder of plaintiff, but there was no liability until the risk was accepted. It is further stipulated that proofs of death were satisfactory; that demand for payment was made by plaintiff and that defendant refused to pay.

Propositions of law were submitted by both parties. All the propositions requested by plaintiff were held, all requested by defendant were denied, and the court passed on the ultimate question in the case by holding at plaintiff's request that both reinsurance policies issued by defendant to plaintiff on the life of Goertz were in full force and effect at the time of the death of Goertz April 9, 1924, and that defendant is liable thereon. Defendant contends that it is not liable on either policy. The controlling question with reference to both policies is, What was the effect of the notice of March 19, 1923, upon the policies? Defendant contends, if we understand aright, that the effect of that notice was to automatically cancel both of the policies as of the subsequent dates of their anniversaries.

In support of this contention its appeal in the first instance is to the reciprocal reinsurance contract itself. This reciprocal reinsurance contract was made a part of each policy issued. Defendant argues that the contract is controlling and appeals to what it calls the "four corners" of the contract. Defendant says that the oral evidence is not admissible to vary this contract, except as it might be received to remove an ambiguity; that there is no ambiguity and that the writing itself must be taken to express the intention of the parties. If the intention of the parties can be ascertained by an examination of the writing, we agree the law is as defendant contends. It must, however, be remembered that the only object of applying rules

of construction to a written contract is that the intention of the parties as expressed by its language may be ascertained. In this particular case it must also be remembered in that connection that the burden of proof is upon defendant. It pleads a cancellation of the policy. The burden of proving that affirmative defense is therefore cast upon it. Any doubt, it would seem, must be resolved in favor of plaintiff. Moreover, an insurance contract is always construed liberally in favor of the insured. By the same reasoning it would appear that a reinsurance contract also should be liberally construed in favor of the reinsured. The law does not favor a forfeiture. It does not look with favor upon any construction which tends to render void and unenforceable a writing to which the parties have given their assent.

In the light of these rules and principles let us consider the contract we are here asked to construe. Defendant says that it is not ambiguous. We agree that the language is clear and distinct and apparently without any ambiguity; but when we come to apply the language of the contract to the actual facts which appear, the construction is not made without considerable difficulty, and the meaning is not quite so plain and distinct as defendant would have us think. In such cases the modern tendency is in the direction of considering facts and circumstances which will tend to make clear the meaning of the language used and thus also make it possible to ascertain the real intention of the parties.

The question turns first upon the construction to be given to the fifth clause of the reinsurance contract. The proviso therein is to the effect that the reinsured company (here plaintiff) in case it increases its maximum limit on an individual or single life to be retained at its own risk, may "by giving written notice" reduce "policies of reinsurance issued hereunder."

This clause would appear to be for the benefit of the company reinsured (in this case, plaintiff). The contract says plaintiff *may* give a written notice. No duty is created so far as the reinsured company is concerned. In other words, under the terms of the contract plaintiff might give the notice. It might not give the notice. The provision is wholly for plaintiff's benefit.

The proviso is further to the effect, however, that if any policy of reinsurance is so reduced, then all the policies issued under the contract and then in force must also be similarly reduced. In other words, if the reinsured company decides, as it may, to give the written notice, it must cover all policies which the reinsuring company has written under the terms of the contract. There is a further provision (unimportant here, we think) to the effect that if any life is reinsured in two or more companies, the reinsurance shall be reduced only in the proportion that the total reduction required bears to the total reinsurance on such life.

Another clause provides:

"All such reductions shall take effect upon the renewal dates of the respective reinsurance policies next after the date of such notice."

This provision seems to be clear and unambiguous. In the absence of modification, either by agreement or conduct, it means that the date upon which the reduction is to take place is definitely fixed as being upon the renewal dates of the respective reinsurance policies next after the date of the notice. This provision is positive and binding upon both parties, but either party with the consent of the other might, of course, waive the provision. Such are the terms of the reinsurance agreement—clear and unambiguous enough until we attempt to apply them to the particular facts.

On March 19, 1923, plaintiff wrote defendant that its executive committee had decided to increase its maxi-

mum retention upon a single life from $7,500 to $10,000 "as from April 1st, 1923." In the letter plaintiff points out to defendant that under the terms of the reinsurance agreement the increase would take effect on the anniversary date of the reinsurance, "commencing with and following April 1, 1923." In another paragraph the letter states that if agreeable to defendant, plaintiff *"will make this request at the time when payment of the renewal premium is tendered."* In other words, plaintiff said in effect, "We do not make this request now; indeed, under the terms of our contract with you we have no right to make it now, but we inform you of the reduction which we are about to make and of the fact that we claim the right to request the reduction upon the anniversary dates of our respective policies." The letter adds that, of course, defendant is not on the risk for the amount by which the reinsurance policy is to be reduced from the due date of the premium. In other words, plaintiff said in substance: "If we request this reduction, as of right we may, then from the date the premium is due, your liability will be terminated." The notice does not refer specifically to the reinsurance policy of Goertz. It refers to all the reinsurance policies held by plaintiff to which it might become applicable.

The proposition of plaintiff, as we understand it, is conditional, not absolute. The notice looks to the future, not to the present, and the final decision would depend upon facts which might exist at that time in the future when the request for a reduction should be made.

The reply of defendant is dated March 21, 1923, and its language indicates an acceptance on its part of this construction. It informs plaintiff that the letter of the 19th has been received and recites with accuracy the contents of plaintiff's letter; then adds, "It will be entirely agreeable to us to handle the matter as indicated in your letter." The reply then further sug-

gests that if plaintiff will forward the policy of reinsurance to be reduced "upon the next anniversary" defendant will be glad to give the matter "prompt attention." In other words, plaintiff gives notice of the contemplated action on April 1, 1923, which will give to plaintiff the right at a future date to reduce its insurance, and defendant says, "If you will forward the policy of reinsurance at that time we will give the matter attention."

We cannot but construe this correspondence between the parties as putting the whole matter up to future negotiation on the date when the right of plaintiff to reduce its policies would become absolute under the terms of the contract. When that date arrived conditions had changed, plaintiff in the meantime having written $5,000 additional insurance on the life of Goertz. Under these circumstances plaintiff then had no right to demand a reduction in reinsurance on these particular policies, and defendant had no right to demand such reduction. The notice as to what might be done in the future had become ineffectual by reason of the fact that the supposed right upon which it was based had been removed by the action of plaintiff in issuing further insurance upon the life of Goertz.

At the request of plaintiff the trial court held as a proposition of law:

"If it appears to the court from the evidence that the plaintiff carried at its own risk its full maximum of retention of original insurance on the life of said Goertz on all reinsurance policy anniversary dates after March 19, 1923, and prior to the death of Goertz on April 9, 1924, then the court holds that the letter from the plaintiff to the defendant dated March 19, 1923, notifying the defendant of the plaintiff's change in maximum retention and the defendant's reply thereto dated March 21, 1923, did not of themselves bring about any subsequent reduction in the amount

of reinsurance issued by the defendant to the plaintiff on the life of said Goertz.''

We think the court rightly held that such must be the reasonable interpretation of the language of the contract as indicated by the conduct of the parties with reference thereto. Moreover, this interpretation seems to conform to that which the respective parties put upon the agreement in a similar situation when the amount of policy No. 45642 was reduced from $3,000 to $500 on August 20, 1921, following the increase of the maximum risk on a single life from $5,000 to $7,500. In that instance, upon the subsequent anniversary, plaintiff delivered the policy to defendant and defendant thereupon indorsed the reduction on the policy. *Merle v. Beifeld,* 275 Ill. 594.

In so far as policy No. 45642 is concerned, the interpretation which we have put upon the reciprocal reinsurance contract and the notice of March 19, 1923, is further indicated by the fact that after the anniversary date of that policy and after the giving of the notice, plaintiff paid and defendant accepted the premium upon the policy. The acceptance of this premium is wholly inconsistent with the idea that the effect of the notice was to bring an immediate and automatic reduction of the policies, as defendant contends.

Certainly as far as that policy is concerned, defendant could not accept a premium on the policy and then be heard to allege that the policy had been canceled. We do not overlook the contention of defendant that the particular official having authority so to do did not have actual knowledge of the fact that the premium had been paid. He could have had such knowledge and in the exercise of reasonable diligence would have had such knowledge. Defendant will therefore be held to have acted with knowledge.

Again, the premium was not only received, but a receipt in the usual form was issued for it, and defend-

ant retains the premium paid. It has not returned the premium. It has not offered to return the premium. This is persuasive evidence that defendant did not regard either of the policies as automatically canceled by the notice given. In so far as this specific policy is concerned, it has much greater weight. It would amount to a waiver of forfeiture in case the policy is held to have been forfeited, and it would amount to a renewal of the policy under the circumstances in case it were held to have been canceled. On this point the court at the request of plaintiff held:

"If it appears to the court from the evidence that the defendant on September 27, 1923, received and accepted from the plaintiff the premium of $4.83 on reinsurance policy number 45642, for the year beginning August 20, 1923, and ending August 20, 1924, and at all times prior to the beginning of this suit has retained the same, then the court holds as the law that the defendant by accepting and retaining said premium has waived any defense to this action for recovery of the amount of that policy on any ground arising prior to the date of such acceptance, of which ground it had knowledge or was charged with knowing, prior to the acceptance of said premium."

This proposition of law is sustained by the case of *Germania Life Ins. Co. v. Koehler,* 168 Ill. 293, cited in plaintiff's brief, but defendant in its reply does not either distinguish or discuss the case.

Defendant further argues that if the risk had terminated, then there could be no waiver because there was nothing left to insure. It says that it is obvious that there could not be a renewal of a new risk; that a renewal would of necessity have to be on a risk that was previously insured, and that plaintiff by its increase in retention limits absorbed defendant's risk and thereafter carried the risk upon its own account; that by issuing an additional policy upon the life of Goertz it undertook a new risk and plaintiff is re-

quired to say that defendant agreed to insure a new risk without knowing that there was such a risk and without plaintiff making any application for reinsurance upon the new risk in the manner provided in the contract. Defendant says that if the old risk was absorbed by plaintiff's increase in retention limits and if plaintiff desired to undertake a new risk and thereafter requested defendant to reinsure upon such new risk, it was incumbent upon plaintiff to advise defend-. ant of the nature and extent of the new risk and the amount of reinsurance requested by a written application, as provided in the second section of the contract between plaintiff and defendant.

These contentions ignore obvious and conceded facts in the case. The risk was not new. The policies had not been surrendered. They were still in the possession of plaintiff when the respective anniversary dates arrived. Presumably if defendant desired or regarded the matter as in any way involving a new risk, it would have refused payment of the premium and demanded a medical examination and other preliminaries to the taking of a new risk. All these were waived by accepting payment of the premium, and so far as policy No. 45642 is concerned, defendant is estopped by its conduct in taking and retaining that premium.

Defendant has cited *Stevenson v. Sun Ins. Office,* 17 Cal. App. 280, 119 Pac. 529, and *Hillock v. Traders Ins. Co.,* 54 Mich. 531, 20 N. W. 571. These cases hold in substance that the physical surrender of fire insurance policies is not necessary to a termination of the risk where the evidence shows that such was the actual intention of the parties. We do not regard these cases as at all inconsistent with the views herein expressed. *National Life Ins. Co. v. Metropolitan Life Ins. Co.,* 226 Ill. 102, is also cited. It holds that where the parties mutually agree to cancel a reinsurance contract there is a sufficient consideration. We do not question that proposition, but it is not applicable here.

Under the facts and the law we think it must be held that the parties did not intend by the correspondence of March 19 and March 21, 1923, that an immediate and automatic reduction of the reinsurance held by plaintiff should be brought about as of the subsequent anniversaries; that as a matter of fact the minds of the parties never met upon any proposition to agree to a cancellation of the policies, and that defendant is liable.

The judgment of the trial court is therefore affirmed.

*Affirmed.*

O'Connor and McSurely, JJ., concur.