FARMERS AUTOMOBILE INSURANCE ASSOCIATION, Plaintiff-Appellant, *v.* ROSEMARY PURSLEY *et al.*, Defendants-Appellees.

(No. 69-61; 

Fifth District—March 5, 1971.

John Jacobsen, of Mt. Vernon, for appellant.

Wham & Wham, of Centralia, (William B. Wham, of counsel,) for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiff, The Farmers Automobile Insurance Association, brought suit

to obtain a declaratory judgment contending that a policy of automobile insurance issued by it to Rosemary Pursley on a 1965 Pontiac, purporting to cover the period September 6, 1966 to March 6, 1967, was void and of no force and effect because of misrepresentations allegedly made. Defendant, Steven N. Pursley, a son of Rosemary, while driving the 1965 Pontiac, was involved in a collision with defendant Roland F. Autenreith on January 20, 1967. Defendant Russell Pursley was the husband of the named insured, Rosemary Pursley. In a bench trial the court found the issues for defendants holding the policy was in force at the time of the collision.

An amended complaint alleged Russell Pursley as agent for Rosemary on September 6, 1966 signed an application for coverage on a 1965 Pontiac which contained a declaration which was materially false, and that as a result of such application plaintiff issued its policy to Rosemary as the named insured. Plaintiff's further alleged that the false representation was that neither Russell Pursley nor Rosemary Pursley had ever been cancelled whereas Russell Pursley listed on said application as a driver had been cancelled and refused renewal by an insurer, and further that the representations were false in that Russell and Rosemary Pursley knew that their sons, including defendant Steven N. Pursley, frequently drove the automobile and continued to drive it after September 6. The Pursleys, by their answer, denied that false representations were made in the application and that their sons frequently drove and continued to drive after September 6.

Plaintiff produced evidence to the effect that Illinois National Insurance Company had cancelled an automobile policy issued to Russell and Rosemary Pursley with a student endorsement and that that policy covering the period of July 31, 1965 to July 31, 1966 was cancelled for non payment of premium; and that an automobile policy issued to Russell and Rosemary Pursley by Union Indemnity Company was not renewed on its expiration in July of 1965 although there is evidence neither of the insured requested any renewal. Union Indemnity's agent testified that he had no official notice from his company that the policy would not be renewed and that 15 days prior to its expiration he wrote Pursleys to the effect that the policy would expire but said nothing concerning renewal.

On September 6, 1966, according to the evidence presented and objected to by defendants, Russell Pursley signed the name of his wife Rosemary to an application prepared by a secretary of plaintiff's agent at Salem, in response to questions asked of Russell Pursley, on which was printed "During the past three years no insurer has cancelled insurance issued to the named insured, similar to that afforded hereunder" and no

exceptions thereto were designated. The application was admitted into evidence over the objection of defendants. Plaintiff acknowledges that the application was not attached to the policy.

Subsequently a policy was issued to which was attached an automobile declaration countersigned September 16, 1966 by plaintiff's authorized agent and containing no other signatures, which named Rosemary Pursley as the insured and the policy period was stated as from 09/06/66 to 03/06/67 on the 1965 Pontiac. It contained the following Item 7(b). "During the past three years no insurer has refused to issue or cancelled insurance, issued to the Named insured, similar to that afforded hereunder". No exception to the item was designated. The agent did not testify and there is no evidence that he relied on any alleged misrepresentation in making the declaration.

There was also evidence that plaintiff gained knowledge of the alleged misrepresentation no later than September 21, 1966, some four months before the collision of January 20, 1967, and within 30 days of the issuance of the policy (9/16/66) and the declarations of plaintiff's agent (9/16/66). The policy, by condition 33(1) provided, "Cancellation By Company-Limited (1) Effective thirty days after the inception of this policy or, if the policy is a renewal, effective immediately, the company shall not exercise its right to cancel the insurance afforded". During that period plaintiff could have cancelled for any reason it wished, and by virtue of condition 33(3)(b) they were not limited by 33(1) if the insurance was obtained by fraudulent misrepresentation. But plaintiff never at any time, according to the record, clearly and unequivocally took any steps to cancel the policy, or advise Rosemary Pursley that the policy was cancelled but stated instead that the company gave her oral notice of their discoveries and asked that she request cancellation. The reason given to explain this unique approach to cancellation was that the insured would not then have a cancellation upon her record, a position inconsistent with the testimony that insured had a cancellation, known to plaintiff at the time.

On October 13th, beyond the 30 day period, the plaintiff did write the following letter to defendant Rosemary Pursley:

"Rosemary Pursley
1317 North Rotan
Salem, Illinois

"Policy Number 655078, for insurance coverage on your 1965 Pontiac was recently issued.

We wish to advise that no insurance coverage has been in force because we believe certain of your declarations, forming a part of the application, to be materially incorrect. Should our contention that no

coverage has been in force fail for any reason, then this letter alternately becomes formal notice of termination of any coverage which may have been in force, such termination to be effective March 6, 1967, at 12:01 A.M. Standard Time.

You should contact your agent, Glen Atkinson, for any return premium that may be due you."

It is noted that the letter makes no mention of cancellation and neither that word, nor the words "cancel" or "cancelled" are used in it.

Plaintiff contends that this letter was to inform the defendant Rosemary Pursley that she did not have insurance coverage and also to provide notice that under condition 33(2) "Unless the company, at least 25 days in advance of the end of the policy period, made to the insured named in Item I (Mrs. Pursley) of the declarations at the address shown in the policy notice of its intention not to renew the policy, the named insured shall be entitled to renew. . . . . . . .".

No explanation is given as to why, if as plaintiff contends the letter was clear to advise Mrs. Pursley that she never had any coverage, and consistent with a void ad initio theory, notice of termination at the end of the policy period in compliance with condition 33(2) was required. Condition 33(3)(b) provided that the 25 day notice requirement contained in Condition 33(2) was of no effect if the insurance was obtained through fraudulent misrepresentation.

■■ The letter was written by plaintiff's Senior Automobile Underwriter, Theobold, who appeared as a witness. He testified that he was aware when he wrote the letter that the application was not a part of the policy and that when he in the letter advised "we believe certain of your declarations, forming a part of the application, to be materially incorrect" he was referring to the application signed by Russell Pursley. The first sentence of the second paragraph is therefore meaningless legally because nothing said in an application not made a part of the policy could form a basis for a claim of misrepresentation. See Ill. Rev'd. Stat. ch. 73, par. 766 and *Freburg et al. v. Coronet Insurance Co.*, 96 Ill.App.2d 39. Theobold, the author referred to the letter as "this termination letter". A careful reading of the second paragraph could lead to the interpretation that the policy which had been "recently issued" had not been in force up to the date of letter but would be from that date on until its termination on March 6, 1967. If it was not to ever be in force, there obviously was no reason for advising Mrs. Pursley that it was to be terminated at some future date, or that the policy would terminate on its expiration date, March 6, 1967.

■■ Theobold also testified that if he had known the true factual situ-

ation, as an underwriter he would not have ordered the policy to issue. Of course appellees were not able to contradict that statement, but it was obviously based on his assumption that not only had there been a cancellation by Illinois National for non payment of premiums, but that Union Indemnity had refused to renew, a fact not borne out by the record. In our opinion the evidence left the question of materiality of the alleged misrepresentation as a question of fact which was determined by the trial judge who heard the evidence and observed the witnesses. As a result we would not reverse unless his determination was clearly and manifestly against the weight of the evidence. *Rose v. St. Louis Union Trust Co.*, 99 Ill.App.2d 81, 241 N.E.2d 16.

Plaintiff contends there is no ambiguity in the representation set forth in item 7(b) of the declaration which was broader than the printed question on the application in that the declaration included "no insurer has refused to issue". With reference to this we would only note that both are limited to the named insured, and that Rosemary Pursley was the only named insured in plaintiff's policy and that neither the declaration or the application for the policy was in the language of the declaration involved in the case of *Klim v. Johnson*, 16 Ill.App.2d 484, 148 N.E.2d 828, which concluded with "or to any of his household" thus having a commitment with regard to past history of any policies issued in any way other than to the exact named insured in the policy at hand.

While we cannot say that this case turns on any ambiguity of the policy which should be construed against the company which wrote the policy, it would appear that if they attach the importance to such declarations as they appear to, in order to escape liability, that theirs is the responsibility to make the declarations sufficiently clear that the applicant clearly understands that the declaration applies to policies that included other named insureds, without having to search through definitions, exclusions and conclusions many times more voluminous than the insuring agreement.

■■ The rule that the language of an insurance policy is construed, in case of ambiguity, most strongly against the insurer, is applicable to the letter to the policyholder. When a party seeks, because of misrepresentation or any other ground, to declare an agreement void from its inception as plaintiff here does, it is generally referred to as rescission. To invoke this remedy requires an election and action on the part of the party rescinding to accomplish this result. Even with unimpeachable grounds for rescinding or declaring the policy void from its inception, the insurer does not have to do so as it might elect otherwise. However, it is uniformly held in Illinois that one seeking to rescind a transaction

on the grounds of fraud must elect to do so promptly after hearing of the fraud, must announce his purpose and must adhere to it. *Schoenbrod v. Rosinthal,* 35 Ill.App.2d 113 at 120, 116 N.E.2d 187, *Lipkin v. Burnstine,* 18 Ill.App.2d 509 at 518-519, 152 N.E.2d 745. Here the evidence of plaintiff discloses that plaintiff learned of the alleged misrepresentation no later than September 21, 1966, within 30 days of the issuance of the policy. It was not until October 13, 1966 that the letter, which certainly cannot be construed as an election to declare the policy void ab initio, was written, by an author who described it "as a termination letter", and the content of which indicated that the termination date would be March 6, 1967, more than a month and a half after the loss.

Plaintiff here contends that failure to disclose prior cancellations on an automobile insurance policy is, as a matter of law, material to the risk, and cites *Pruitt v. Allstate Insurance Co.,* 92 Ill.App.2d 236, 234 N.E.2d 576, and cases cited therein as support of the contention. In Pruitt, the insurer moved for summary judgment, after admitting the issuance of the policy, to which was attached the application, alleging the voiding of the policy and the tender of return of premium and after the insurer filed a request to admit facts to which the alleged insured failed to respond. The insurer then filed affidavits and no counter affidavits nor pleadings of any kind were filed by the plaintiff claimant. There the affidavit stated unequivocally that the insurer would not have issued the policy had the question been truthfully answered and the affidavit stood uncontradicted and the Court held that "to accept plaintiff's theory that a misrepresentation of the application for insurance policy is necessarily a quesion of fact for the jury would preclude the summary judgment procedure from any such case". We are here not dealing with a summary judgment procedure, nor a policy with the application attached, nor a policy that had been voided by the insurer, nor a situation in which the insurer's evidence is unequivocal but is self-contradictory.

There is however reputable authority to the effect that such self serving declarations of materiality by an underwriter even standing undenied are not conclusive, as Pruitt might be interpreted to suggest. In *Mayflower Insurance Exchange v. Gilmont,* 280 F.2d 13 at 17-18, the CCA (9th Circuit) said:

"The only other testimony respecting materiality was the statement by the underwriting manager to the effect that if *all* the facts had been known the policy would not have been issued.

Upon this record we are satisfied that Mayflower's self-serving declaration of materiality cannot be held conclusive; (Citing cases) that reasonable minds could differ as to whether these facts so con-

cealed, standing alone, would have influenced Mayflower not to issue the policy in question. The materiality of the misrepresentations then, remained a question of fact".

In *Moyer v. Lloyds*, 33 Ill.2d 566, 213 N.E.2d 283, our Supreme Court said "The materiality of a false representation in an application for insurance is a Question of fact for the jury and a verdict should not be set aside if there is any evidence which standing alone tends to support it. (Citing cases)". There the Court said: "The Appellate Court erred in holding as a matter of law that the materiality of the misrepresentations was proved" after pointing out the necessity of specific questions if it was to be expected that the subject matter would substantially enhance the possibilities of claims.

In *Moyer v. John Hancock Mut. Life Ins. Co.*, 6 Ill.App.2d, 126 N.E.2d 157, the Court pointed out numerous holdings to the effect that "the question of whether or not misrepresentations are material is ordinarily a question of fact for the Court, unless they are of such nature that all persons would agree that they are or are not material".

■■ Under the facts and circumstances here present, we believe the trial court could have reasonably found that due to the language of the declaration it was misunderstood and misrepresentations were not made, or that if misrepresentations were in fact made that they were not material. We therefore cannot say that the judgment of the trial court was against the manifest weight of the evidence.

Judgment affirmed.

GEORGE J. MORAN and CHARLES JONES, JJ., concur.