TINA LEDBETTER, a Minor by her Father and Next Friend, Jerry Ledbetter, Plaintiff-Appellee, v. CLARENCE ALLANDSLEE, Defendant and Third-Party Plaintiff-Appellee (Lincoln Towers Insurance Agency, Inc., *et al.*, Third-Party Defendants-Appellees; Inter-Insurance Exchange of the Chicago Motor Club, Third-Party Defendant-Appellant).

First District (4th Division)   No. 85—3580

Opinion filed February 5, 1987.—Rehearing denied March 30, 1987.

■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■

Christine E. Smith and John J. O'Connor, both of Chicago, for appellant.

Robert K. Kelty, of Chicago, for appellee Clarence Allandslee.

JUSTICE LINN delivered the opinion of the court:

Third-party defendant, Inter-Insurance Exchange of the Chicago Motor Club (Exchange), brings this appeal seeking reversal of a trial court's order granting summary judgment in favor of defendant third-party plaintiff, Clarence Allandslee, and against Exchange. Allandslee filed his third-party action after Exchange refused to defend and/or indemnify Allandslee in a lawsuit brought by plaintiff, Tina Ledbetter. Allandslee had previously purchased an automobile liability insurance policy from Exchange, and an accident resulting in the Ledbetter lawsuit fell within the coverage provided by the policy.

After some preliminary discovery, Allandslee moved for summary judgment claiming that no genuine issue of material fact existed and that he was entitled to judgment as a matter of law because: (1) Allandslee had complied with his obligations under the policy by making all of the payments due in a timely fashion; (2) the policy was not effectively cancelled by Exchange; and (3) that as a result, the policy Allandslee purchased from Exchange was in full force and effect at the time of the Ledbetter accident. Thus, according to Allandslee's summary judgment motion, Exchange was obligated to defend and/or indemnify Allandslee in the Ledbetter lawsuit.

Exchange argued, on the other hand, that it had previously cancelled Allandslee's insurance policy and that consequently, it owed no duty whatsoever to Allandslee.

After considering the parties' respective briefs and oral arguments, the trial court ruled in favor of Allandslee and ordered Exchange to defend and/or indemnify Allandslee in the Ledbetter lawsuit.

Exchange now brings this appeal contending: (1) that the trial court erred in finding that Allandslee had paid all of the premiums due Exchange, and (2) that the trial court erred in ruling that the Exchange had not effectively cancelled Allandslee's insurance policy.

We affirm.

BACKGROUND

In early April 1979, Allandslee applied for auto liability insurance with the Lincoln Towers Insurance Agency, Inc. (Lincoln). Lincoln is a broker for the "Illinois Automobile Insurance Plan." Apparently, several insurers have an agreement or plan whereby certain applications for insurance are placed into a pool and thereafter distributed evenly among the insurers. The insurer to which the risk is ultimately assigned provides the auto insurance applied for. Exchange is one of the insurers involved in this plan.

Upon accepting Allandslee's application, Lincoln placed it into the pool. Allandslee's application was then assigned at random to Exchange. In addition to filling out an application, Allandslee also paid Lincoln a premium down payment of $111. As part of the insurer's agreement, Exchange received a percentage of Allandslee's $111 down payment.

On April 23, 1979, Exchange mailed Allandslee his insurance policy, an account statement, and his premium payment book. Exchange informed Allandslee that he could pay the remainder of his premium in either one lump sum or, in the alternative, in installment payments of $53 each. If Allandslee chose the installment method, his first payment was due on June 23, 1979. However, the policy, the account statement, and the premium payment book failed to contain an address to which Allandslee was to remit his premium payments. In addition, the account statement listed the amounts due as:

| | | |
|---|---|---|
| | yearly premium | $364.00 |
| (the down payment) | cash | $111.00 |
| | installment charge | $10.00 |
| | (total due) | $263.00 |

Thus, the balance due on Allandslee's policy amounted to $263.00.

In the months that followed, Allandslee made the following payments on his insurance policy: $34.55 on June 19, 1979; $34.55 on July 2, 1979; $34.55 on August 8, 1979; $34.55 on September 10, 1979; $34.55 on October 11, 1979; $34.55 on November 8, 1979; $34.55 on December 11, 1979; and $34.55 on January 3, 1980. When Allandslee made these payments, however, he delivered them in person to Lincoln, rather than mailing them directly to Exchange. Lincoln accepted each of the payments, gave Allandslee a receipt, and never informed him of any problem regarding his method of payment.

Ironically, the total paid by Allandslee (through the installments),

equalled $276.40. However, because his balance due was $263.00, Allandslee actually paid more for his insurance policy than was required.

Exchange claims though that Allandslee was obligated to mail his premium installments directly to Exchange. Exchange further asserts that it was never reimbursed for any of the payments that Allandslee paid to Lincoln. That being the case, Exchange argues that it cancelled Allandslee's policy by mailing him a cancellation notice on July 17, 1979. The cancellation notice, according to Exchange, became effective on July 31, 1979.

Allandslee, however, contends that he never received the cancellation notice sent by Exchange. Instead, Allandslee continued to make the payments in the months that followed (as set forth above) pursuant to his obligations under the insurance policy.

On December 13, 1979, Allandslee was involved in an auto accident in which Tina Ledbetter was injured. Allandslee went to Lincoln and informed them of the accident.

Soon thereafter, Ledbetter filed suit against Allandslee. Following Exchange's refusal to defend and/or indemnify Allandslee in that lawsuit, Allandslee filed this third-party action against Exchange.

During the hearings before the trial court, the key issue was whether the evidence presented by Exchange was sufficient to establish that Allandslee's policy had been effectively cancelled. It appears that Exchange tendered to the trial court documents which purported to be a copy of the cancellation notice sent to Allandslee (taken from microfiche) and a copy of what Exchange claims constitutes proof that a letter by certified mail (containing the cancellation notice) had been sent to Allandslee. In addition, Exchange tendered an affidavit of one of its employees who asserted, essentially, that Allandslee had failed to properly tender the premium payments required by the policy and that as a result, Exchange had cancelled Allandslee's policy in July.

The problem, however, related to the legibility of Exchange's documents. Although the trial court could read the affidavit with little problem (it was typed), the trial court was unable to determine what Exchange's cancellation notice read, nor could the trial court decipher those documents relating to the mailing of the certified letter. We note that the trial court gave Exchange two extensions in order to obtain more readable copies of the documents. Notwithstanding this, Exchange was unable to provide documents of any greater clarity.

On November 12, 1985, the trial court granted Allandslee's summary judgment motion. The trial court found that Exchange had failed to prove that Allandslee's policy had been effectively cancelled and that Allandslee had tendered all of the premium payments due.

Exchange now brings this appeal.

Opinion

As set forth previously, Exchange raises two arguments in this appeal: (1) that the trial court erred in finding that Allandslee paid all of the premiums due on the policy, and (2) that the trial court erred in finding that Exchange's cancellation was ineffective.

I

We first address Exchange's claim that Allandslee failed to pay Exchange all of the premiums due under the policy. Exchange contends that Allandslee made his payments to Lincoln rather than Exchange and that Exchange never received any of Allandslee's payments other than the initial $111. That being the case, Exchange asserts that Allandslee cannot bring an action based on the policy issued by Exchange for Allandslee has failed to fulfill his chief obligation under the policy, namely, the payment of premiums due.

■ It is well settled in Illinois that all ambiguities in an insurance policy must be resolved in favor of the insured and against the insurer who has drafted it. (*Murphy v. Peterson* (1984), 129 Ill. App. 3d 952, 473 N.E.2d 480.) Courts are to adopt that construction of a policy which favors the insured and must resolve any uncertainty in the insured's favor. (*Wahls v. Aetna Life Insurance Co.* (1983), 122 Ill. App. 3d 309, 461 N.E.2d 466.) In determining whether an ambiguity exists, a court is to look at any evidence that sheds light as to the intent of the parties including the situation of the parties, the purpose of the contract, and the circumstances surrounding the formation of the contract. (*Chicago Board Options Exchange, Inc. v. Connecticut General Life Insurance Co.* (7th Cir. 1983), 713 F.2d 254.) It has been held that the aforementioned rules are applicable to documents sent by the insurer to the insured where those documents relate to the insurance coverage contracted for. (*Farmers Automobile Insurance Association v. Pursley* (1971), 130 Ill. App. 2d 980, 267 N.E.2d 734.) In addition, the construction of insurance policies and the documents related thereto are questions of law for the court to decide. *Sawyer Fruit & Vegetable Co-operative Corp. v. Lumbermens Mutual Casualty Co.* (1983), 117 Ill. App. 3d 407, 453 N.E.2d 826.

In the case at bar, Allandslee applied for his insurance policy with Lincoln. At that time, Allandslee paid $111 as a down payment on the policy. Soon thereafter, Exchange, as part of the insurer's pool agreement, accepted responsibility for Allandslee's policy and received a percentage of his down payment.

■ Exchange then mailed Allandslee his policy, the premium payment book, and an account statement. Listed on the account statement was the $111 cash down payment previously paid by Allandslee. Neither the account statement, the premium payment book, nor the policy itself indicated that the only method of acceptable payment was for Allandslee to tender the payments due (after the initial down payment of $111) directly to Exchange. In fact, the premium payment book inferred quite the opposite. The payment stubs that Allandslee retained after making each payment (and which were part of the premium payment book supplied by Exchange) explicitly provided for a "teller's stamp." By providing a space for a teller to personally stamp Allandslee's receipts, it is self-evident that the mailing of the premium payments due to Exchange was not, and could not have been, the only means of payment contemplated by Exchange. A teller can only stamp a customer's receipt when that customer is personally present before the teller. If the customer simply removed the payment coupon from the premium payment book and mailed it, stamping of the payment stub by a teller would be impossible for the stub would never have left the insured's possession. Thus, we must reject Exchange's claim that the premium payment book was unambiguous in requiring Allandslee to make his payments directly to Exchange.

Furthermore, the account statement sent to Allandslee by Exchange also supports a finding that an ambiguity existed as to where Allandslee was required to make his premium payments. The circumstances surrounding the parties' transaction indicate that Allandslee made his first payment to Lincoln. Soon thereafter, Exchange mailed an account statement to Allandslee which specifically credited Allandslee's account for that first payment. Allandslee then tendered all of the remaining payments, like the first, in person to Lincoln. By crediting Allandslee's account with the payment made to Exchange, Exchange indicated that it approved, accepted, and credited Allandslee's account for any payment made through Lincoln.

Thus, Exchange's insurance policy and the documents relating thereto are ambiguous with regard to where and how Allandslee was required to make payments in at least three respects: (1) none of the documents indicated in any way that the only method of acceptable payment was for Allandslee to send the payments directly to Exchange; (2) the premium payment book contained payment stubs which specifically provided for a teller to personally stamp each payment stub; and (3) Exchange credited Allandslee's account with the payment made to Lincoln thereby giving tacit approval to that method of payment. Under these circumstances, we believe that an

ambiguity existed as to where, and how, Allandslee was required to make his premium payments. That being the case, we are required to resolve this uncertainty in Allandslee's favor. (See *Wahls v. Aetna Life Insurance Co.* (1983), 122 Ill. App. 3d 309, 461 N.E.2d 466.) Accordingly, we agree with the trial court that Allandslee fulfilled his obligations under the insurance policy when, based on the circumstances set forth above, he tendered all of his payments to Lincoln.

In addition, although Exchange claims that Allandslee was required to pay for his policy in full within six months (by six payments), the record reveals that Allandslee's premium payment book contained at least eight coupons and receipts. Each receipt related to a different individual payment and stated "PAYMENT NUMBER [1], [2], [3]," etc. In other words, the premium payment book itself contemplated at least *eight payments.* Clearly, there is little purpose in providing eight sets of coupons and receipts where only six are applicable. Moreover, nowhere on the account statement is there an indication that the policy was to be paid in full within six months. Based on these facts, we agree with the trial court that an ambiguity existed as to whether Allandslee was required to make six payments (as asserted by Exchange) or eight payments.

In sum, we believe that the trial court correctly found that Allandslee fulfilled his obligations under the insurance policy issued by Exchange. It is evident that an ambiguity existed as to where and how Allandslee was to make his payments as well as the minimum number of payments actually due.

## II

We next address Exchange's claim that the trial court erred in finding that Exchange's cancellation of Allandslee's policy was ineffective.

A notice of cancellation must conform to the applicable provisions in the insured's policy and cancellation can only be effected through strict compliance therewith. (*Conley v. Ratayzcak* (1980), 92 Ill. App. 3d 29, 414 N.E.2d 500.) In determining whether notice by an insurer is sufficient to cancel a policy, courts must examine the letter containing the alleged cancellation in its entirety. (*Burnett v. Illinois Agriculture Mutual Insurance Co.* (1943), 318 Ill. App. 629, 48 N.E.2d 559.) In addition, a defendant-insurer who contends that an insurance policy has been effectively cancelled carries the burden of proof. *McNeil v. Allstate Insurance Co.* (1966), 69 Ill. App. 2d 270, 216 N.E.2d 3; see also 22 Ill. L. & Prac. *Insurance* sec. 249 (1956).

In the case at bar, paragraph 20 of Exchange's insurance pol-

icy provides:

"All notices of cancellation shall include a specific explanation of the reason or reasons for the cancellation."

Paragraph 20 also requires that Exchange mail the cancellation notice via the United States Post Office. Thus, Exchange is required to prove that its cancellation notice: (1) explained the reason for the cancellation, and (2) was mailed through the United States Post Office.

We have carefully and thoroughly examined the document which Exchange claims is a copy of the cancellation notice sent to Allandslee in July 1979. While we are able to read the words "NOTICE OF CANCELLATION" at the top of one document, we cannot, even with the closest examination, decipher the remaining portions of the cancellation notice. The words of the notice are simply too blurry. Consequently, we are unable to determine if Exchange complied with paragraph 20 by identifying the reason or reasons for the cancellation of Allandslee's policy.

Likewise, the documents tendered by Exchange in support of its assertion that it mailed the cancellation notice to Allandslee are, at the very least, confusing.

Hence, we like the trial court, are unable to determine whether Exchange has complied with its obligations as set forth in paragraph 20. The documents tendered by Exchange as representative of the cancellation notice and proof of mailing are simply illegible. Thus, Exchange has failed to satisfy its burden of proving that it effectively cancelled Allandslee's policy and, as a result, the policy remained in effect at the time of the accident involving Tina Ledbetter. Exchange is therefore required to defend and/or indemnify Allandslee in that lawsuit.

Although whether an insurer has given a cancellation notice to the insured is sometimes a question of fact for a jury to decide (See, *e.g., Great Northern Life Insurance Co. v. Federal Life Insurance Co.* (1931), 260 Ill. App. 369), in this case the material facts are undisputed and therefore summary judgment is appropriate. (*United Farm Bureau Mutual Insurance Co. v. Elder* (1981), 86 Ill. 2d 339, 427 N.E.2d 127.) We note that the trial court gave Exchange two continuances for the specific purpose of allowing Exchange to obtain more legible copies of the alleged cancellation notice. Exchange was unable to provide documents of any greater clarity. Thus, a jury trial is unnecessary for the key fact, namely, whether Exchange complied with paragraph 20 of its policy, is revealed by the documents contained in the record before us.

CONCLUSION

Accordingly, for the reasons set forth above, we affirm the decision of the trial court awarding summary judgment in favor for Allandslee and against Exchange.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.