William A. Johnston, Plaintiff-Appellee, v. V. H. Flannery Building Materials, Inc., Defendant-Appellant.

Term No. 55–F–3.

Fourth District.

May 4, 1955.

Released for publication May 26, 1955.

Oehmke, Dunham & Boman, and Richard T. Carter, all of East St. Louis, for defendant-appellant.

Kassly & Carr, of East St. Louis, for plaintiff-appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

The plaintiff, William A. Johnston, suffered injuries when a ready-mix concrete truck backed into him. He obtained a jury verdict for $25,000 against the defendant, V. H. Flannery Building Materials, Inc., the owner and operator of the truck. The defendant perfected this appeal from judgment on the verdict.

Errors assigned are that plaintiff failed to prove due care on his part, or that defendant's driver was negligent, therefore judgment should have been entered notwithstanding the verdict. In the alternative, a new trial should have been granted because the trial court admitted speculative medical testimony, and the verdict is excessive due to passion and prejudice produced by the erroneous testimony.

Plaintiff was employed on a new residential development. He was at a site where trenches and forms were in place for a poured concrete foundation, five feet deep. As soon as a footing was poured, it was his duty to stretch a wire along it, attached to the batter boards, and then to insert metal rods vertically in the fresh concrete, aligning the projecting ends with the wire. With several concrete trucks operating, it required about an hour to pour, and another half hour for plaintiff to do his work, therefore he had to act promptly after the last concrete was poured in order to place the rods before the concrete set.

The surrounding terrain was soft due to new grading and filling, but access was provided from the highway by a cindered road, which came to a dead end a short distance beyond the site involved. The nearest edge of the cindered drive was two or three feet from the batter boards, which were about three feet from the foundation. Under the conditions it was not feasible to turn the heavy truck around, it had to be backed out the way it came in.

On this occasion the driver had proceeded about a truck length beyond the site and then backed up turning the truck so that the rear end approached the

trench, permitting the trough to be placed in position to pour. It required only a part of his load to complete this footing, and he then pulled away about a truck length preparatory to backing out on the cinder drive, and plaintiff immediately went to work. Apparently, the truck was not fully straightened on the roadway, for when it backed up the rear end again approached the poured footing and batter board where plaintiff was working on his knees with his back to the truck. His helper attempted to shout a warning above the noise of the truck, but plaintiff was caught and pinned under it with one leg doubled against his chest, and was dragged some distance, causing injuries hereafter described. The truck also knocked down the batter boards, the rear end of the truck being six feet off the road.

■ Whether the driver's action in this case could be declared negligent, depends in large part upon his knowledge of the probable consequences of his act. If he had no knowledge and was not chargeable with knowledge that his act involved danger to another, then he should not be held responsible for a result he could not reasonably foresee. Hays v. Place, 350 Ill. App. 504, 508. But if a reasonably prudent man would foresee that commission of an act in a certain way would likely result in injury to another, and injury occurs, such act may be declared negligence. Wintersteen v. National Cooperage & Woodenware Co., 361 Ill. 95, 105.

It is in the evidence that this driver had been warned to avoid hitting the batter boards, and that he was fully aware of the fact that men would proceed to work on the fresh concrete as soon as pouring was complete. He testified that he leaned out of the left door to look, but he could not see the men because the truck was "cater-corner" with the back end farther around than the front. Thus he knew that he was not straight on the road, but had a diagonal position, with the rear end

toward the construction site where men were working. Yet he did not pull up to a straight position, nor did he stop or get out and look. He continued to back up with the rear end some six feet off the drive, knocking over the batter boards and dragging the plaintiff some eight or ten feet before he saw the helper's signal to stop.

■ In view of his admitted knowledge of conditions and his awareness of the direction his truck was taking, it was a question for the jury whether his persistence in backing up without further precaution was negligence. It cannot be held as a matter of law that his action was consonant with ordinary care.

■ ■ As to contributory negligence, defendant contends that, because plaintiff knew that trucks backed up to the forms to pour concrete, and had seen it done many times, he should have watched this truck until it was gone. But the evidence is only that trucks backed into the construction area to pour, and that they departed by backing down the road. A workman guided them into position to pour, but it was not customary to guide them away. There is no evidence that any truck, after completing its task and pulling away, again backed into the area, or evidence of any other reason for plaintiff to anticipate such action. The plaintiff was not bound to anticipate defendant's negligence. Ziraldo v. W. J. Lynch Co., 365 Ill. 197. The cinder road was variously estimated as ten to fourteen feet wide; there was some reason to believe that a truck eight feet wide could travel on it without backing into construction work. We are obliged to hold that the question whether plaintiff used ordinary care for his own safety was clearly for the jury to decide.

The alleged error concerning medical testimony refers to an opinion given by a medical expert of adequate qualifications. He was asked if, from his examination of plaintiff and of X-rays, he had an opinion based on reasonable medical certainty, whether plaintiff had a ruptured disc (referring to an intervertebral

disc). When he answered affirmatively, he was permitted to state his opinion as follows "In my opinion he has a ruptured disc." As a statement of medical opinion concerning existing conditions, we see nothing wrong with it.

The defense objection stems from the fact that the witness had previously stated "He probably has a ruptured disc." This was objected to and objection sustained. The question had been so phrased that it ended with "Can you tell us whether or not Mr. Johnston has a ruptured disc?" Apparently the physician understood that he was asked to state a definitely observed fact, rather than an opinion, for he commented it would require an operation to see enough to state positively. This and several other answers were ruled out by the court, but the colloquy of counsel and the rulings of the court evidently clarified what was meant for he finally gave the quoted unqualified opinion.

■ The witness had testified fully as to various symptoms and conditions which he had observed that would indicate a ruptured disc. Considering all of his testimony, it is clear that his opinion was not purely speculative, or a mere conjecture, but was based on observed conditions, and therefore was admissible. Williams v. Walsh, 341 Ill. App. 543. The trial court's rulings were correct.

■ The plaintiff's injuries as found when he reached the hospital consisted of numerous bruises and lacerations all over his back. The most severe was a tear of the large back muscles known as the erector spinae, which support the back in an erect position. His bowels were paralyzed, and he was in such critical condition that for a week it was doubtful that he would survive. Tubes were inserted in both nostrils, one to supply oxygen and the other to drain gases from his digestive system. The attending physician testified there was no operative technique which could repair

the damage, rest coupled with diathermy and massage were prescribed.

His condition two years later was that he had a pelvic heel or tilt, could not turn his back to the right at all and to the left only 10 degrees, normal being 25 degrees in both directions. He still wore a brace, and continued treatments. A built-up shoe was advised. Medical testimony was that the back injury was permanent and would worsen unless treatment were continued. There is much more about the spine and back, and the prognosis. Pain continues and he cannot do the heavy work which was his prior occupation. He can handle lighter steel, but needs the brace to ease the pain and cannot wear it at work since it prevents any bending.

Medical expenses had exceeded $1,200 and loss of earnings to the time of trial exceeded $3,000. The injuries are clearly permanent and severe, and earning capacity is affected. Under these conditions we cannot say that the verdict is excessive. The defense emphasizes the lack of any bone fractures, but there is no rule, medical or legal, that fractures are the only cause of severe and permanent injury causing disability. Their absence cannot overcome the competent and well-qualified medical testimony in this case.

There being no reversible error presented, the judgment is affirmed.

Judgment affirmed.

CULBERTSON, P. J. and BARDENS, J., concur.