ROBERT E. CARVER, Plaintiff-Appellee, *v.* RONALD F. GROSSMAN, Admr. of the Estate of BROADUS J. PUTNAM, Deceased, Defendant and Third-Party Plaintiff-Appellee—(WALTER BISHOP, Third-Party Defendant-Appellant, and WALTER BISHOP for the use and benefit of the Truck Insurance Exchange of Farmers Insurance Group, Petitioner-Appellant.)

(No. 55320;

First District—June 13, 1972.

John G. Phillips, Ltd., of Chicago, (Ellis B. Rosenzweig, of counsel,) for appellee.

Rolland H. Stimson, of Chicago, for third-party plaintiff-appellee.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and Klohr, Braun, Lynch & Smith, both of Chicago, (John M. Moelmann, Thomas J. Weithers, and D. Kendall Griffith, of counsel,) for third-party defendant, petitioner-appellant.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Robert E. Carver (plaintiff) suffered personal injuries on May 17, 1964. He brought suit against Broadus J. Putnam, owner of the motor vehicle involved. Putnam died on June 13, 1964, and his administrator, Ronald F. Grossman, was substituted. The administrator filed a third party action against Walter Bishop, plaintiff's employer, the operator of the service station in which the event had occurred. After conferences between counsel for all parties and the trial judge, the original parties settled their differences and a consent judgment was entered in favor of plaintiff and against the administrator in the amount of $75,000. A bench trial was then held on the third party claim. The court entered judgment in favor of the administrator (third party plaintiff) and against Bishop for $75,000.

Bishop appeals to this court contending: 1) that the proof is insufficient as regards the original action of plaintiff and also concerning the third party claim; 2) that the trial court erred in excluding an evidence deposition given by Bishop; and 3) that the consent judgment in the principal case was a product of collusion. In addition, Bishop had claimed a lien for compensation payments made by him to plaintiff as his employee in the amount of $22,976.39. (See Ill. Rev. Stat. 1969, ch. 48, par. 138.5 (b).) At the conclusion of the evidence, the court denied Bishop's motion to impress a lien upon the proceeds of the consent judgment for this amount. Bishop also seeks reversal of this ruling.

A factual statement is essential. Plaintiff testified that he was employed by Bishop as a tow truck driver. In the past, he had been familiar with greasing and oiling of automobiles. Bishop instructed him to grease Putnam's car and to change the oil and oil filter. Bishop then drove the car into the central stall of the service area.

Plaintiff testified that he proceeded to grease and service the car as directed. When this had been virtually completed, he was standing in front of the car leaning over the engine with the hood up. Plaintiff testified that he knew that the brakes were not set because he had turned the front wheels in greasing the car. No blocks had been placed at the wheels or other precautions taken to prevent the car from moving.

Plaintiff further testified that, at this time, Bishop was in the service area some 10 or 12 feet away from the car speaking to Putnam. Putnam was standing next to the car on the driver's side. This car was a 1951 Dodge with manual gearshift lever mounted on the right side of the steering column. Plaintiff stated that he heard Bishop say, "Mr. Putnam, check your gas." A short time thereafter the car suddenly lurched forward. Plaintiff was pinned between the car and a tool box on the ground and was severely injured. Plaintiff further testified that after the occurrence he heard Putnam ask Bishop, "Why didn't you tell me it was in gear?" Plaintiff testified that he never heard the car door open and never heard Putnam entering.

The only other witness was a police officer called by the administrator (third party plaintiff). He testified that he was called to the service station and that Putnam told him directly after the occurrence that he had started the engine after he was instructed to do so and that the car had leaped forward and pinned plaintiff between its bumper and a tool box some 16 or 18 inches high. From the officer's testimony it appeared that Putnam was either in a state of shock or might have been drinking prior to the occurrence.

Bishop's first contention seeks to reach and question the sufficiency of the evidence to support plaintiff's original action and also to support

the judgment in favor of the administrator. The original judgment order entered by the court on November 4, 1969, reflected waiver of jury trial "by agreement of counsel for the parties." In the order, the court recorded an agreed settlement between plaintiff and the original defendant in the amount of $75,000 and found that this sum was fair and equitable in view of the serious injuries suffered by plaintiff and the amount of his medical and hospital expenses and lost earnings. The court accordingly entered a consent judgment in favor of plaintiff and against the administrator in the amount of $75,000. The order continued the hearing of the third party claim to the following day.

■■ Under circumstances of this nature, there was no judicial determination of the rights of plaintiff and the administrator, in the original suit. In effect, the judgment order merely recorded the agreement between plaintiff and the original defendant and did not constitute a judicial finding of any kind. (See *Sleck v. Butler Bros.*, 53 Ill.App.2d 7, 13, 202 N.E.2d 64.) Consequently, Bishop was entitled to defend the third party claim against him by advancing the theory that plaintiff was guilty of contributory negligence and this is the central factor in Bishop's attack upon the original judgment.

■■ Complete analysis of the record, however, leads us to the conclusion that the evidence brought out in the separate hearing of the third party claim, which commenced the day after the consent judgment was entered, was more than ample to show that plaintiff was not guilty of contributory negligence. Plaintiff at his precise position because of necessity in performance of his assigned duties. It is scarcely arguable that plaintiff failed to take all available precautions to protect himself. Furthermore, plaintiff was in a situation which might conceivably prove perilous because of the need to perform his duties as an employee. This factor must be considered in weighing the evidence of the degree of care exercised by plaintiff. Note this principle expressed in the decision of this court in *Barry v. Elgin, Joliet and Eastern Ry.*, (Ill.App.2d), 270 N.E.2d at page 158 and cases there cited. In our opinion, the determination as to whether or not plaintiff was free from contributory negligence was a question of fact for the trial court. (*Baran v. City of Chicago Heights*, 43 Ill.2d 177, 181, 251 N.E.2d 227.) When the trial court entered judgment in favor of the administrator and against Bishop in the amount of $75,000, he found, in effect, that plaintiff was free from contributory negligence. We cannot say that this determination is against the manifest weight of the evidence. *Chapman v. Huttenlocher*, 125 Ill.App.2d 39, 47, 259 N.E.2d 836.

■■ The contention regarding lack of sufficient evidence as to the

active negligence of Bishop will be considered next. It is quite clear that if Bishop was guilty of active negligence and Putnam guilty only of passive negligence, then the administrator is entitled to indemnification. This right exists as a matter of law and because of the relationship of the parties to the transaction and does not depend upon the existence of any express or implied agreement for indemnification. (*Mullins v. Crystal Lake Park District*, 129 Ill.App.2d 228, 231, 262 N.E.2d 622.) Our courts have pointed out many times that the active-passive determination is a difficult question and depends upon all of the facts and circumstances in any particular case. It is a matter of determination of degree of culpability perhaps bordering closely upon application of a theory of comparative negligence. It is also clear that active negligence may consist of a fault of omission and the determination of active or passive does not rest solely upon the physical conduct of the parties. This difficult determination is a matter which must be decided in accordance with the facts of each case and "*    *    *   there is no single comprehensive definition   *    *    *" of "[t]he distinction between active and passive negligence   *    *    *." See *Topel v. Porter*, 95 Ill.App.2d 315, 330, 237 N.E.2d 711.

■■■■ In this regard, the determination of active-passive negligence was an issue of fact for the trial court. The conclusion to be reached is one with reference to which the minds of reasonable men might well take divergent points of view. The briefs in this case argue both conclusions with a good degree of convincing logic. However, the trial court, who saw and heard the witnesses, determined that Bishop was guilty of active and primary negligence while the negligence of the original defendant, "if any," was passive and secondary. The court pointed out that Bishop controlled the entire operation in the service station; that he placed the automobile in the service stall; that he failed to exercise due care by leaving the key in the ignition with the car in gear; that he failed to put blocks in front of the wheels of the vehicle; that he directed plaintiff to perform the work and that he actually gave the instructions which caused the original defendant to put the car into motion. Under circumstances of this nature, we may not set aside the findings of the trial court. As in connection with our approval of the finding of plaintiff's freedom from contributory negligence, we cannot say that the finding that Putnam's role was passive and Bishop was guilty of active negligence is contrary to the manifest weight of the evidence and such finding is accordingly approved. *Farmers Automobile Ins. Ass'n. v. Pursley*, 130 Ill.App.2d 980, 267 N.E.2d 734.

The next contention consists of an attack upon the ruling of the trial

court excluding an evidence deposition given by Bishop and tendered on trial of the third party claim. This deposition was taken on September 8, 1965, by counsel for plaintiff. Counsel for the original defendant appeared at the deposition. Since the third party complaint was not filed until April 22, 1966, Bishop was not represented by counsel at the taking of the deposition. No additional evidence deposition of Bishop was taken during the period of some three and one-half years which· intervened between the filing of the third party claim and trial thereof.

● 12   A serious question thus arises as to whether the deposition could properly be used in connection with trial of the third party litigation which had been severed from the original cause. The argument is advanced by counsel for the administrator that the parties and the issues involved in the two cases are quite different. However, we need not pass upon this contention. We have carefully examined the Bishop deposition. In effect, Bishop testified that he was not present at the time of the incident but that he was standing by a cash register in the service station some 15 feet away; that he saw nothing and that his attention was directed to the incident when he heard the crash. This testimony is directly contradicted by that of plaintiff and the police officer. The most that can be said with reference to the effect of the deposition is that it serves to create a conflict in the testimony. However, we cannot say that the addition of the evidence in the deposition would require us to conclude that the finding of the trial court was contrary to the manifest weight of the evidence. Where evidence conflicts, as in this case at bar, we may not substitute other conclusions for those reached by the trial court. *Fairfield Savings & Loan Assn. v. Kroll*, 106 Ill.App.2d 296, 307, 246 N.E.2d 327.

■■   Bishop contends that the consent judgment was procured in the original case by collusion and for the purpose of defrauding him. His counsel urges that plaintiff would have been incompetent to testify against the administrator and therefore plaintiff would have been unable to prove his freedom from contributory negligence and the liability of the decedent. On the contrary, counsel for the administrator argues that the testimony of the police officer and testimony of other available witnesses that Carver was working on the car would have been sufficient *prima facie* proof on these issues. Both of these arguments are assertions which are hardly susceptible of validation. The principal factor here to our minds is that the trial judge, who was familiar with the facts and who had conferred with all counsel, expressly found that the amount of the settlement was fair and equitable in view of the painful and dangerous injuries suffered by plaintiff and the consequences thereof. In fact, the court pointed out that plaintiff's injuries might well have justified a

larger verdict. This conclusion seems supported by the amount of the compensation lien claimed here by Bishop. Bishop, by his counsel, participated in settlement of the original case and was apparently aware at all times of steps taken. The settlement was consummated under the close supervision of the trial judge and was expressly approved by him.

■■ It is true that Bishop was bound by the amount of damages fixed in the consent judgment. See *Deel v. United States Steel Corp.*, 105 Ill. App.2d 170, 185, 245 N.E.2d 109. The principle of total indemnification rather than partial contribution operates in the case at bar as well as in a situation involving a written contract for indemnity. However, the rights of Bishop were fully protected here. He raised the defense of contributory negligence of plaintiff as well as his own freedom from active negligence. These issues were fully litigated in the trial court and argued in this court.

We do not hold that a case of collusion to the detriment of a third party defendant can never exist. We hold that in the case at bar we find no basis for the charge of fraud or collusion. The judgment in the third party action in favor of the administrator and against Bishop should be affirmed.

■■ The remaining issue arises with reference to the lien claimed by Bishop regarding payments of Workman's Compensation benefits to plaintiff. (See Ill. Rev. Stat. 1967, ch. 48, par. 138.5(b).) After hearing lengthy arguments, the trial court denied Bishop's claim for enforcement of his rights under this section of the Act. This statute, as it existed in 1957, limited recovery of compensation payments by the employer to situations in which the injuries were "* * * not proximately caused by the negligence of the employer or his employees * * *." (Ill. Rev. Stat. 1957, ch. 48, par. 138.5 (b).) However, commencing with the 1959 statute, these words were deleted by the legislature. It needs no considerable analysis or argument to establish the fact that deletion of this clause from the statute gives Bishop, the employer, the right to recover compensation payments previously made to plaintiff, his employee, even though the negligence of Bishop was the primary and active cause of the injuries suffered by the employee.

The briefs in this case devote considerable space to learned consideration of various authorities dealing with this question. Virtually every one of these cases is noted and considered in the statement made by this court in the very recent decision of *Reeves v. Tepen*, 131 Ill.App.2d 1004, 268 N.E.2d 912. We concur with the conclusion reached in that case and with the legal analysis of the various authorities therein cited.

It follows that the judgment entered in favor of Ronald F. Grossman, administrator of the estate of Broadus J. Putnam, deceased, and against

Walter Bishop, third party defendant, in the amount of $75,000 is affirmed, but said judgment is modified so as to provide for payment to Walter Bishop of his lien for compensation payments made by him to plaintiff in the amount of $22,976.39.

Judgment affirmed as modified.

BURKE and LYONS, JJ., concur.