TIMOTHY CONNOLLY, Plaintiff-Appellee and Cross-Appellant, *v.* MARY D. MELROY, Defendant-Appellant.—(SHELL OIL COMPANY, Defendant and Cross-Appellee.)

First District (1st Division)   No. 77-882

Opinion filed August 14, 1978.

Kralovec, Sweeney, Marquard & Doyle, of Chicago (George E. Sweeney and Edward V. Scoby, of counsel), for appellant.

Maddux, Johnson & Cusack, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee Shell Oil Company.

Defrees & Fiske, of Chicago (Edward J. Griffin and Gary Schuman, of counsel), for appellee Timothy Connolly.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

This appeal concerns an accident in which a worker, Timothy Connolly, while working in a service station belonging to Shell Oil Co., was struck by an automobile driven by Mary D. Melroy. At trial, in the Circuit Court of Cook County, Connolly's cause of action against Melroy for negligence was sent to the jury, but there was a directed verdict of dismissal as to his action against Shell. The jury found Melroy liable for negligence in the accident and awarded $60,000 in damages to Connolly. On appeal, Melroy argues that the verdict against her cannot stand because Connolly was guilty of contributory negligence as a matter of law and because at trial it was reversible error for the court to instruct the jury on the issue of reasonable and improper speed when there was no evidence presented on this issue. Connolly appeals from the directed verdict dismissing his cause of action against Shell.

For the reasons stated below, we find none of these contentions meritorious.

The incident giving rise to this action occurred on February 21, 1972, at a gasoline service station known as the Southland Shell Station, located at the northwest corner of Algonquin and Wilke Roads in Rolling Meadows, Illinois. That intersection is a "T" intersection, with Wilke Road coming from the north and ending at Algonquin Road, which runs east and west. The service station has three islands of pumps, two to the south of the station building, parallel to Algonquin, and one to the east, parallel to Wilke. There are two driveways along each side.

Plaintiff Connolly was employed by Garco Construction Co., which by agreement performed a variety of maintenance and construction tasks at Shell stations in the area. Connolly had been sent to clear frozen debris from a pump set beneath the surface of the service station pavement in an 18-inch deep hole covered by a metal plate. The hole is located somewhat northeast of the east driveway on the Algonquin Road side of the station.

On the day in question, Connolly arrived at the station in a Garco truck and parked it northeast of the pumps along the Wilke Road side of the station so that it blocked entry to the east side of those pumps. While working at the hole, Connolly faced south, and assumed a variety of positions from kneeling to prone.

While Connolly was working, Melroy drove into the station from the westbound lanes of Algonquin Road, taking the east driveway, and headed toward the Wilke Road pumps, striking Connolly with her automobile.

The time of the accident was roughly 5:10 p.m. Connolly testified that he was forced to wait until late in the afternoon to work on the pump because it was only then that the debris surrounding it was thawed, and it was impossible to deal with the debris when it was frozen because

chiseling or using a torch could ignite gasoline present in the hole. Connolly said Garco did not have barriers or cones for him to mark his work site. The operator of the service station testified that there were barrels around the station and that he had never forbidden their use as barriers for workmen.

Connolly also testified that he did not see Melroy's vehicle until just before impact. Melroy testified that she did not see Connolly until after the impact.

There was also testimony that, because of the difference in elevation between the station's pavement and that of Algonquin Road, the driveways on that side of the station featured an incline, and that vehicles turning into these driveways would therefore have one side higher than the other until both wheels had reached the station's level.

The first contention to be dealt with is defendant-appellant Melroy's argument that the jury verdict in the present case must be reversed because the evidence at trial showed that the plaintiff was guilty of contributory negligence as a matter of law.

Ordinarily, the issue of contributory negligence is a question of fact (*Novotny v. Mott* (1972), 9 Ill. App. 3d 252, 254, 292 N.E.2d 87), and it becomes a matter of law "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the (plaintiff), so overwhelmingly favors the (defendant) that no contrary verdict based on that evidence could ever stand * * *." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

■■ The character of evidence which establishes the existence of contributory negligence as a matter of law has been elaborated in the decisions of the courts of this state; relevant pronouncements on this subject include the following: that where a plaintiff has available two ways to perform a task, one tried and known to be safe, and the other unexplored or known to entail hazards, and chooses the latter course, he is contributorily negligent as a matter of law (*Day v. Barber-Coleman Co.* (1956), 10 Ill. 2d 494, 511, 135 N.E.2d 231, 239); that where a plaintiff chooses for no particular reason not to use a safer method available to him and he is injured, he is guilty of contributory negligence as a matter of law (*Reid v. Employers Mutual Liability Insurance Co.* (1973), 14 Ill. App. 3d 174, 178, 302 N.E.2d 108, 112, *aff'd* (1974), 59 Ill. 2d 194, 319 N.E.2d 769); that where the plaintiff by his own act places himself in a precarious position or exposes himself to a danger that he could have avoided through the exercise of reasonable care, the plaintiff may be guilty of contributory negligence as a matter of law (*Ferguson v. Southwestern Bell Telephone Co.* (1972), 8 Ill. App. 3d 890, 893, 290 N.E.2d 429, 432); and that where the plaintiff had a safe course to follow that a reasonably cautious person would have chosen, the law will charge him with the

knowledge of it and he cannot act, except at his peril, in a place of great danger and remain oblivious to the safer alternative (*Klimovich v. Crutcher* (1965), 57 Ill. App. 2d 444, 451, 206 N.E.2d 723, 727).

■■ On the other hand, it is not decisive that a safer course of action was available (*Fisher v. Lang's Grocery* (1973), 9 Ill. App. 3d 696, 292 N.E.2d 915), or that the course chosen entailed certain hazards (*Paul v. Carroll* (1973), 16 Ill. App. 3d 173, 305 N.E.2d 588). The crucial issue is whether the choice of the less safe course of action was unreasonable (*Johnston v. V. H. Flannery Building Materials, Inc.* (1955), 6 Ill. App. 2d 35, 126 N.E.2d 510; *Spurr v. LaSalle Construction Co.* (7th Cir. 1967), 385 F.2d 322, 326), and in determining the reasonableness of the plaintiff's conduct one of the relevant factors where the plaintiff is an employee injured in the course of his work is his need to accomplish the task at hand (*Carver v. Grossman* (1972), 6 Ill. App. 3d 265, 285 N.E.2d 468, *rev'd on other grounds* (1973), 55 Ill. 2d 507, 305 N.E.2d 161).

In applying these principles to the facts of the present case, we note first that plaintiff Connolly had no choice regarding the location or time at which he performed his task. The device he sought to clean was fixed in place and it was possible to remove debris from it only in the late afternoon, when it had thawed. Likewise, he had no choice regarding his posture while performing the task, it being necessary to stoop, kneel and assume a prone position in order to probe the 18-inch depth of the hole.

The plaintiff did, however, have a choice as to the means to be used to protect him from automobiles making use of the service station. As Melroy points out, it would have been safer for him to surround his work area with bright-colored cones or wooden horses. Instead, Connolly parked his truck in such a way as to prevent any automobile from approaching him from behind, and so that any driver approaching from his front would see his route blocked and would be visible to Connolly, provided Connolly were not too deeply engrossed in his work.

Clearly, the plaintiff's chosen course was not the safest possible way to deal with the situation. But just how available the safer course was, in view of his working conditions and how dangerous the course he chose was under the circumstances must also be considered. The evidence shows that no cones or horses were provided by Connolly's employer, Garco, for these purposes, and that none were offered by the service station. Accordingly, the safer course of action urged by Melroy was available to plaintiff only if he took extraordinary action in securing safety equipment. As to the hazardousness of the course pursued by the plaintiff, his precaution in parking his truck significantly reduced the possibility of his being surprised by a vehicle and served to discourage any vehicles from attempting to use the area of the service station where he was working. Because the surface of a service station is not an ordinary roadway, but is occupied by equipment, stopped vehicles and

pedestrians, the basic hazard of working in such an area is not as great as working in a street, and the plaintiff's precautions reduced this hazard further.

A very similar set of facts was dealt with in *Reedy v. Goodwin* (1938), 285 Mich. 614, 281 N.W. 377, where a repairman stooping to work on a pump was struck by a vehicle. In holding that the issue of the repairman's contributory negligence was a question of fact, it was noted that, in a service station, there is less travel and less rapid travel than on a public road, and that the nature of his duties and surrounding circumstances created a fact issue as to whether he was contributorily negligent.

■■ We find that, because the alternative chosen by the plaintiff in the present case was not clearly unreasonable in view of the overall circumstances of his work, including the difficulty of pursuing a safer course of action, his conduct was not contributory negligence as a matter of law. This was a fact issue properly submitted to the jury and the verdict of the jury will not be disturbed.

The second contention raised in this appeal is whether the court below erred in giving the jury an instruction on the issue of unreasonable and improper speed. Defendant-appellant Melroy argues that there was no evidence that she was driving at an unreasonable and improper speed.

It is true, of course, that it is reversible error to instruct the jury on issues upon which no evidence has been produced. *Rosenkrans v. Barker* (1885), 115 Ill. 331, 3 N.E.2d 93; *Magill v. George* (1952), 347 Ill. App. 6, 105 N.E.2d 808.

■■■ However, Melroy concedes that there was testimony regarding the observed speed of her automobile as 10 to 15 miles per hour and its stopping distance after the impact, a car length or less. This testimony, plus the ample evidence regarding the circumstances of her driving—that she was entering a service station and executing a turn—gave the jury a factual basis sufficient to judge whether her speed was reasonable and proper, because the question of what speed is reasonable and proper depends on the surrounding circumstances (*Brown v. Boyles* (1960), 27 Ill. App. 2d 114, 169 N.E.2d 273). That this was an issue of fact for the jury to decide is not negated by the fact that the evidence includes testimony that Melroy's speed was not unusual for automobiles traveling through the station because the fact that an automobile's speed is in accordance with the norm does not necessarily mean it is safe. *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624; *Guffey v. Gale* (1947), 332 Ill. App. 207, 74 N.E.2d 730.

■■ Because there was evidence both as to the speed of Melroy's vehicle and the surrounding circumstances, the reasonableness of her speed was an issue for which a factual basis was laid and it was appropriate to instruct the jury on this issue.

The third argument presented is plaintiff Connolly's contention that the

trial court erred in directing a verdict in favor of defendant-appellee Shell Oil Co.

The standard to be applied by a trial court in determining whether to direct a verdict is that discussed under the first issue in this appeal, the so-called *Pedrick* rule, and is applicable for reviewing courts in determining the correctness of a trial court's decision on such a question. *Public Taxi Service, Inc. v. Barrett* (1976), 44 Ill. App. 3d 452, 357 N.E.2d 1232; *Campbell v. Cowden* (1974), 18 Ill. App. 3d 500, 309 N.E.2d 601.

Accordingly, the question that must be answered is whether, under the evidence, a jury verdict for Connolly against Shell could never stand. In assessing the evidence, we are mindful that proof of negligence requires proof of a causal link between breach of an alleged duty and the injury complained of. *Altepeter v. Virgil State Bank* (1952), 345 Ill. App. 585, 104 N.E.2d 334.

■■ Connolly's claim against Shell is based on alleged negligence in designing a station entrance ramp or failing to advise Connolly of the danger it posed. There was evidence at trial that, due to the angle of the entrance ramp used by Melroy's automobile, some drivers entering by that ramp would be temporarily unable to see over portions of the hood or fender of their automobiles. This "blind spot" would depend, however, on both the car and the driver, and some cars and drivers would experience no interference with field of view. This is the evidence viewed in the light most favorable to the plaintiff, yet it fails to show any causal relationship between the angle of the ramp and Melroy's colliding with Connolly. There is no evidence that Melroy's automobile was of the kind whose front end would rise to create a blind spot, that Melroy's riding height was such that she would in fact lose a significant portion of her field of view, that the site where Connolly was working coincided with the direction where a driver's view could be blocked, or that the interval between recovery of any such lost vision and arrival at the site where Connolly was working was so brief that there would be insufficient time to stop before striking him.

Accordingly, there was a total lack of evidence that the angle of the ramp contributed proximately to Connolly's being injured, and any verdict against Shell Oil would have to be based on mere supposition. No such verdict could ever stand. We conclude that the trial court properly directed a verdict in favor of Shell.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.